**In re Anonymous No. 142 D.B. 91**

Disciplinary Board Docket no. 142 D.B. 91.

PARIS, *Member,* November 3, 1993—Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania files this report in the above-captioned matter.

I. HISTORY OF PROCEEDINGS

The within petition for discipline was filed by the Office of Disciplinary Counsel on December 10, 1991 against [ ] (respondent), with respect to respondent's alleged

misrepresentation of his firm's client in connection with the filing of a patent application.

The petition for discipline alleged that respondent had violated the following Disciplinary Rules of the Code of Professional Conduct:

(a) D.R. 1-102(A)(4)—dealing with conduct involving dishonesty, fraud, deceit, or misrepresentation;

(b) D.R. 1-102(A)(6)—dealing with conduct that adversely reflects on a lawyer's fitness to practice law; and

(c) D.R. 6-101(A)(3)—dealing with a lawyer neglecting a legal matter entrusted to the lawyer; and violation of the Rule of Professional Conduct 8.4(c) "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

Hearing Committee [    ] was assigned to hear these charges and, upon due notice to all parties, the hearing was conducted on May 12, 1992.

On December 12, 1992, Hearing Committee [    ] filed its report in which it found that respondent by his conduct in failing to file the patent application and failing to inform his clients that he believed that the patent application could not be filed was in neglect of a legal matter entrusted to him in violation of D.R. 6-101(A)(3). The Hearing Committee also found that respondent's conduct between March 1987 and March 31, 1988 in falsely representing that he had filed the patent application and respondent's conduct in continuing to do unnecessary work to cover up his failure to file the patent application prior to March

31, 1988 were violations of D.R. 1-102(A)(4). In addition, the Hearing Committee found that respondent's conduct in representing that he had filed the patent application after April 1, 1988 and respondent's conduct in continuing to do unnecessary work to cover up his failure to file the patent application between April 1, 1988 and April 1, 1990 was a violation of R.P.C. 8.4(c) and that respondent's neglect of a legal matter, deliberate misrepresentations and the performance of useless and unnecessary legal work to conceal the neglect of a legal matter occurring on or before March 31, 1988, was conduct that reflected adversely upon his fitness to practice law in violation of D.R. 1-102(A)(6).

Based on these violations and denying respondent any substantial credit for disclosing these matters to the Disciplinary Board and despite its own observation that "respondent has no history of previous discipline" and "that respondent will not be subject to discipline in the future for similar transgressions," the Hearing Committee nevertheless was convinced that respondent's violations warranted public censure.

Respondent filed its brief on exceptions on January 8, 1993 requesting oral argument and petitioner's brief opposing exceptions was filed on January 17, 1993. A panel was designated to hear oral argument on February 18, 1993. After adjudication by the board on February 25, 1993, the board makes the following findings of fact and conclusions of law.

## II. FINDINGS OF FACT

(1) In or about March of 1986, [A] and [B] of [C] Corporation contacted the law firm of [D], P.C., by whom respondent was employed.

(2) Among other things, client inquired about the possibilities of applying for a patent on a computer security system which [A] and others had invented.

(3) By letter to [B] dated March 27, 1986, Attorney [E] of [D] confirmed that [C] Corporation had retained the firm to investigate the patentability of their invention and she set up a meeting with [A and B] and the respondent for April 3, 1986.

(4) The patenting of an invention will be barred if a patent application is not filed within one year of an offer for sale or other public disclosure of the invention.

(5) Respondent, a patent lawyer of some experience, admitted to the patent bar, was well aware of the one-year bar rule.

(6) Respondent believed that the invention had previously been sold and that the patent did not meet the one-year bar rule. (H.T. 44-46.)

(7) By March of 1987 respondent had prepared and finalized the patent application to the extent that it was in proper form to be filed with the patent office. (H.T. 72.)

(8) By letter dated February 12, 1986, respondent informed his firm's clients of the requirements necessary for obtaining a patent pending status. (H.T. 69.)

(9) By this same letter respondent not only advised his firm's clients of the requirements for a proper oath to be signed and executed but also set forth the bars to patentability. (H.T. 69.)

(10) Respondent was extremely reluctant to file the application, because he felt the oath of those applying for the patent was fraudulent. (H.T. 73.)

(11) Despite acknowledging that his concerns existed as early as spring or early summer of 1986, respondent never brought to the attention of the client or any other attorney at [D] his concern that the patentability of the invention had been or soon would be barred due to the passing of the one year period since an offer for sale or other public disclosure had occurred.

(12) Rather than confront the client and/or bring to the attention of [D] his concerns, respondent kept his concerns to himself although he tried to seek further information from the client concerning these issues.

(13) Despite his concern, respondent began a course of action which led the client and fellow Attorney [E] to believe that he was going to pursue patentability. (H.T. 58-71, Exhs. 1-E—1-L.)

(14) Respondent had prepared and finalized the application by March of 1987. (H.T. 72.)

(15) Respondent requisitioned and received from [D] a check for the filing fee. (H.T. 72-73.)

(16) Respondent made a unilateral decision not to file the application. (H.T. 73.)

(17) Respondent then began a three year period of deception and misrepresentation to both the client and his law firm in order to cover up his decision:

(a) On June 3, 1987, respondent falsely told Attorney [E] that the patent application had been filed. (H.T. 78.)

(b) Respondent ordered and invoiced for patent drawings. (H.T. 83-85.)

(c) From the spring of 1987 until April of 1990 respondent met every four to six months with Attorney [E] and discussed the status of the application. (H.T. 27.)

(d) Respondent claimed a major backlog existed in the patent office, particularly in the electronics group. (H.T. 27.)

(18) Respondent admitted that until the last minute he was attempting to conceal the fact that he had not filed the patent application. (H.T. 121.)

(19) Respondent believed that his firm's clients would improve the invention so that he could file a subsequent patent application to correct any time loss.

(20) Respondent having lost his position with his employer law firm in April of 1990 over his handling of this matter, at that time brought his conduct to the attention of the Disciplinary Board voluntarily.

(21) Respondent has no prior history of discipline.

(22) Respondent is held in high esteem as a patent lawyer by other distinguished members of the bar who testified to his good moral character and excellent professional reputation.

## III. DISCUSSION

Respondent admittedly engaged in neglect and misrepresentation over a single patent application concerning an invention which respondent believed to be of questionable patentability. The real crux of respondent's dilemma was his belief that the firm's clients had sworn falsely to the patent application. As a result respondent unilaterally decided not to file the patent application, because he believed it would be fraudulent and subject him and the client to possible criminal or civil sanctions.

On June 3, 1987, when asked by his associate whose client was making the patent application, if the application had been filed, the respondent answered yes. Thus began a continuing veil of deception in which respondent implied that a patent application had been filed and allowed the firm's clients and the responsible firm attorney to believe that he had in fact filed the patent application during the period of 1987 and April 1990.

What is incomprehensible is that respondent is an experienced practitioner of patent law for about 15 years before becoming an associate with the firm of [D]. Confronted by what he believed to be client duplicity in connection with the information required for the patent application, the respondent did not disclose this fact either to the associate responsible for the client or a senior partner within the firm. Nevertheless, respondent was an astute enough practitioner to encourage the client to improve the invention so that the improvements might be patented without revealing the problem to either the client or the

law firm. Before this could happen, respondent's failure was disclosed and he was dismissed from the law firm. Respondent then turned himself in to the Disciplinary Board and became the subject of discipline. His former firm lost the client and both respondent and his former firm became defendants in a legal malpractice suit.

## IV. CONCLUSION

The question is what discipline should respondent receive under these circumstances. Should it be a public reprimand as recommended by the Hearing Committee or should it be some lesser discipline. Even the Hearing Committee noted that respondent had no prior history of discipline, and they firmly believed that respondent will not be subject to discipline in the future for similar transgressions.

Because of respondent's unblemished prior disciplinary record, his excellent career at the bar to this point and because respondent voluntarily disclosed his transgressions to the Disciplinary Board, candidly admitting matters which might otherwise have been difficult to prove and because the genesis of respondent's misconduct was his belief that to file the patent application was to perpetrate a fraud upon the patent office, which belief does not excuse his violation of the Disciplinary Rules, but which the board nevertheless believes requires a less severe disciplinary sanction than a public reprimand. The board is aware of the climate in the profession in which a young and often inexperienced practitioner may find himself in an ethical conflict between a client and the law firm that

employs him, just as the respondent, a more experienced practitioner, found himself in such a position. Situations such as these happen all too frequently and can be avoided. The profession, individual practitioners and firms must create a climate wherein a lawyer can air such ethical concerns without fear of career-threatening reprisals. Respondent is now a defendant in a legal malpractice suit which may establish that his concerns about the patent application were well founded. The board believes that respondent has been punished sufficiently with the loss of his position with the law firm that employed him, being the defendant in a legal malpractice suit and the imposition of discipline. That the discipline merited by respondent should be more stringent is not called for under the circumstances of this case, since respondent has an unblemished disciplinary history and an excellent reputation at the bar as a practitioner of patent law and because respondent voluntarily subjected himself to the disciplinary process, the board believes that an informal admonition is the appropriate discipline especially where the genesis of the offense is rooted in ethical concerns as are involved in this matter.

## V. DISPOSITION

The Disciplinary Board directs that respondent receive an informal admonition. Costs are to be paid by the respondent.

Board Members Hill, Powell, McGivern, Flaherty and Leonard did not participate in the adjudication.